Alphonse P. Guarding, J.
This is a petition for downward modification of an order of support for five children in the total amount of $55 per week. The aforesaid order is dated, August 17, 1970. Petitioner (hereinafter known as "father”) has been paying child support under the 1970 order and orders prior thereto since 1959. Approximately eight years ago, the petitioner’s former wife (the respondent, hereinafter referred to as "mother”) remarried and moved to Florida with the five children. The father’s contact with his children has necessarily been hampered by the distance between them and the father’s limited means. The father had been current in his support payments since the 1970 order until July, 1975, when he learned for the first time that the three oldest children, Christopher, Karen, and Kim, were gainfully employed and had been so employed since the age of 18 or younger.
Prior to July, 1975 the father had knowledge only of the children working part-time after school. After hearing of their full-time employment and their emancipation, the father stopped payments until October 3, 1975 which was the return date of a motion by the mother to enforce the order. Petitioner appeared in court and paid $715 towards arrears and thereupon filed a petition for downward modification.
The father applied to this court to have the order of support modified downward based on changed circumstances in that the three older children, as aforesaid, are now emancipated by reason of being self-supporting. Further the father seeks credit against overpayment of the difference between $55 per week *553 and the amount to be determined by this court upon the granting on his petition for downward modification. Such a credit is sought against the ongoing obligation of the father to support the two remaining children of the marriage who are not yet emancipated.
The father urges upon the court the following position in pursuit of recovery of the money already paid by him: "Where a payment is made under mistake of law the sum paid is not recoverable. Such payment is different from one induced by fraud, coercion or as the result of a mistake of fact, in which latter instance the sum so paid is recoverable. Ignorance of the law, it has been said, is no excuse * * * It has been succinctly stated that 'ignorance of the deed may excuse but ignorance of the law excuseth not.’” (Szilagyi v Szilagyi, 172 Misc 572, 573.)
Therefore, even by the father’s own position, he would not be entitled to recovery of any of the money voluntarily paid by him for the support of the three emancipated children, subsequent to his knowledge of their employment, but prior to his filing of the petition for downward modification. This was money paid after the father was no longer mistaken as to facts and his payment of $715 for arrears incurred since July, 1975 cannot be recovered.
The question remains as to whether even a mistake as to facts in the payment of child support can warrant a refund or credit to the father.
Szilagyi v Szilagyi (supra), cited by the father in his memorandum of law, is clearly on point, in favor of the father’s position. The other cases cited by the father in support of his contentions are commercial cases and demonstrate no application to a support case of the rule regarding recovery of money paid under mistake of fact. Szilagyi, decided in 1939 is a venerable case, to say the least, and the cases cited by the mother’s memorandum of law are equally as apposite and considerably more recent.
"It has been held that where a matrimonial decree provides for support of minor children until they become emancipated, the decree is not self-executing so as to leave it to the unilateral determination of one party whether the child has become emancipated. Rather, an application should be made to the court to modify that decree [citations omitted]. Among the reasons for this rule is that the emancipation of one child does not necessarily mean that the total amount of support *554 should not remain the same for the other children in view of possible changes in the needs of the parties. (Peters v. Peters, 14 A.D. 2d 778.)” (Keve v Steinberg, 64 Misc 2d 141, 142.)
"However, the fact that defendant is no longer liable for support of the daughter and the fact that defendant may not be liable now for the support of the son, does not mean that defendant is automatically entitled to a reduction in the total amount of the alimony directed to be paid by the judgment [citations omitted]. Testimony should be taken as to present financial condition of the parties and their son to determine whether, on the basis of the present needs of plaintiff and the son and the present financial condition of the defendant, the alimony arrears of the 1950 judgment should now be modified.” (Peters v Peters, 14 AD2d 778; see, also, Gilda G. v Joseph G., 80 Misc 2d 772.)
It is clear from these more recent cases that the right to a reduction in child support does not accrue until the issuance of an order of a court of competent jurisdiction modifying an order for support. It is also clear that a reduction in the total amount of payments is not automatic as a court may find that the increased needs of the remaining unemancipated children do not warrant the reduction. Further, it is clear that whatever reduction would be granted could be retroactive only to the date of the filing of a petition for downward modification and not retroactive to the date of the actual emancipation.
This court holds that the cases cited by the mother, while inescapably apposite, are distinguishable from the case at bar by the facts herein. In Gilda G. v Joseph G. (supra), the father’s petition for downward modification based on the emancipation of his children was predicated upon the attainment by each of these children on their twenty-first birthday, a fact easily ascertainable by the father. In Keve v Steinberg (supra), and Peters v Peters (supra), there was no allegation by the father as to his failure or inability to apprehend the facts concerning the emancipation of his children.
In the instant case the mother remarried many years ago and removed with her five children to Florida. The limited means of the father precluded frequent visits or telephone conversations with his children. Communication was mostly through the mails with some, though not all of the children.
The full-time employment of three of the children and their consequent emancipation, were, therefore, facts peculiarly within the knowledge of the mother, of which she was under *555 an affirmative obligation to reveal to the father. Having failed to make such information known to the father so that he might have sought counsel and pursued adequate relief, it would certainly be a denial of substantial justice to the father to now hear the mother to say that the downward modification can now only be retroactive to the date of the filing of the petition.
Amongst the other factors taken into consideration by the court are the modest means of the father, and the fact that there are still two unemancipated children in the home whose needs may, nevertheless, require more money than will be provided by a straight proportional reduction in the current support order.
The court therefore, reduces the amount of support by $8 per week, per child leaving for the support of the two remaining unemancipated children a total outstanding order in the amount of $31 per week at the rate of $15.50 for the support of each child, retroactive to the date of the filing of the petition.
The court finds that the father is entitled to a credit for payments in the amount of the number of weeks during which each child was self-supporting, multiplied by the amount of reduction per child, for moneys paid prior to his knowledge of the employment of each child.
Therefore, as regards Karen, who commenced working September, 1974, the father is entitled to a credit of 44 weeks (September 1, 1974 through July 1, 1975, the date of his knowledge of the facts) times $8, in the total amount of $352; and with regard to Kim, who commenced employment in May, 1975 the father is entitled to a credit of eight weeks times $8 in the sum of $64. for a total credit of $416. The father is not entitled to a credit for Christopher, who became self-supporting in August, 1975.
The court, in its discretion, in view of the father’s limited means denies counsel fees to the mother for legal services rendered on behalf of the children herein.